******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## IN RE ANALISE M.[*]
## (AC 49311)

Alvord, Wilson and Bishop, Js.

*Syllabus*

The respondent appealed from the trial court's judgment granting the petitioner's motion to transfer permanent legal guardianship and denying his motion to transfer guardianship with respect to his minor child, who had previously been adjudicated neglected. The respondent, who did not challenge any of the court's underlying factual findings, claimed only that the court improperly determined that a transfer of permanent legal guardianship of the child to the child's paternal great aunt, S, who is a licensed foster parent, was in the child's best interest. *Held*:

The trial court, having found by clear and convincing evidence that a transfer of permanent legal guardianship of the minor child was in the child's best interest, did not abuse its discretion in granting the petitioner's motion to transfer permanent legal guardianship to S, as the record was devoid of any direct evidence supporting the respondent's claim that S misunderstood the ramifications of a transfer of permanent guardianship pursuant to statute (§ 46b-129 (j) (8)), and neither of the respondent's claims, relating to his and S's purportedly shared subjective goal of reunification and S's purported misunderstanding of § 46b-129 (j) (8) regarding the reopening and modification of an order of permanent legal guardianship, related to the child-centered best interest determination that he sought to challenge on appeal.

Argued April 13—officially released July 16, 2026[**]

*Procedural History*

Petition by the Commissioner of Children and Families to adjudicate the respondent's minor child neglected, brought to the Superior Court in the judicial district of New Haven, Juvenile Matters, and tried to the court, *Conway, J.*; judgment adjudicating the minor child neglected and committing the minor child to the custody of the petitioner; thereafter, the court, *Dawson, J.*, granted the petitioner's motion to transfer permanent

---

[*]In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

[**]July 16, 2026, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

legal guardianship and denied the respondent's motion to transfer guardianship, and the respondent appealed to this court. *Affirmed*.

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent).

*Evan O'Roark*, deputy solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

PER CURIAM. The respondent father, Chad M., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, granting the petitioner's motion to transfer permanent legal guardianship and denying the respondent's motion to transfer guardianship with respect to the respondent's minor child, Analise M. (Analise).[1] On appeal, the respondent claims that the court improperly determined that a transfer of permanent legal guardianship of Analise to Sheila M., the child's paternal great aunt, was in Analise's best interest.[2] We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. Analise's first experiences with the Department of Children and Families (department) began in October 2016. On October 7, 2016, the petitioner filed a petition alleging that Analise was neglected due to her being homeless as a result of the respondent's incarceration and the inability of the child's mother, Jessica R., to care for her. Also on October 7, 2016, the petitioner filed a motion for an ex parte order of temporary custody, which the court granted the same day. Following her removal from the respondent and Jessica R. in October 2016,

---

[1]Analise's mother, Jessica R., whose parental rights previously were terminated, is not a party to this appeal. Accordingly, all references to the respondent are to Chad M. only.

[2]The attorney for the minor child filed a statement adopting the brief of the petitioner in this appeal pursuant to Practice Book §§ 67-13 and 79a-6 (c).

Analise was placed in the care of Sheila M. The court adjudicated Analise neglected on February 23, 2017. On March 30, 2017, the court committed Analise to the care and custody of the petitioner until such time as it issued further orders. The same day, the court approved final specific steps necessary to facilitate reunification of Analise with the respondent and Jessica R. On April 28, 2018, the petitioner filed a termination of parental rights petition on behalf of Analise. On February 13, 2019, the court granted the petition as to Jessica R. but denied the petition as to the respondent. Analise remained in Sheila M.'s care until December 2019, when she was reunified with the respondent, initially under a period of protective supervision, which expired on July 21, 2020.

The events underlying the present appeal began in June 2023, after the respondent left Analise in the care of her paternal grandfather, who resides with Sheila M. On September 1, 2023, the petitioner filed a neglect petition alleging that Analise had been abandoned, was being denied proper care and attention, physically, educationally, emotionally, or morally, and was being permitted to live under conditions, circumstances, or associations injurious to her well-being. Also on September 1, 2023, the petitioner filed an ex parte motion for temporary custody, which the court, *Conway, J.*, granted the same day. The court, *Chavey, J.*, subsequently sustained the order of temporary custody on September 8, 2023. On October 10, 2023, the court adjudicated Analise neglected and committed her to the care and custody of the petitioner. The court also finalized specific steps for the respondent on October 10, 2023.

On July 11, 2024, the petitioner filed a motion to review the permanency plan. The petitioner's plan for a transfer of guardianship to Sheila M. was approved by the court, *Conway, J.*, on August 13, 2024. On April 9, 2025, the petitioner, for the first time, moved for the court to vest permanent legal guardianship of Analise in Sheila M. The respondent filed an objection to the petitioner's motion on April 17, 2025. On May 15, 2025, the petitioner filed

a motion to review the permanency plan, requesting a transfer of permanent legal guardianship of Analise to Sheila M. On July 11, 2025, the respondent filed a motion for a transfer of guardianship to Sheila M. In his motion, the respondent argued that "a transfer of guardianship and not a permanent transfer of guardianship is in the best interests of [Analise]."

A consolidated trial on the petitioner's motion for permanent legal guardianship, the respondent's motion to transfer guardianship, and objections thereto was held on July 14, 2025.[3] At trial, the petitioner presented testimony from one witness, a department social worker who was assigned to Analise's case as of June 2024, and introduced into evidence five exhibits. The petitioner's exhibits included a copy of the specific steps ordered for the respondent on September 1, 2023, and finalized on October 10, 2023, documents evaluating the respondent's compliance with the court-ordered specific steps, and department studies in support of the permanency plan filed July 11, 2024, and in support of the motion seeking a transfer of permanent legal guardianship. The petitioner's motion for judicial notice, filed July 10, 2025, was granted by the court without objection.

Following the close of evidence, the court offered Sheila M. an opportunity to address the court, if she so desired. Sheila M. addressed the court in relevant part as follows: "I've invested my life in raising Analise. I don't want to take my nephew's rights away. He's family. . . . I love him dearly. I'm only invested in what's right for Analise and that she can live the life that she was going to live. . . . I don't want him to ever think I'm here to hurt him. I'm not. I just want to do the best by her . . . . I want her to

---

[3]The parties appeared before the court, *Knight, J.*, on August 21, 2025. During the proceeding, the court canvassed the respondent and confirmed that, at the time of trial, the respondent understood the distinctions between a transfer of guardianship and a permanent transfer of guardianship. The court also advised the respondent that, pursuant to General Statutes § 46b-129 (j), if the court issued an order for permanent legal guardianship, the respondent may not file a motion to terminate guardianship.

live her best life . . . . I think that right at this particular time she should stay with me. When he gets in a better place, I have no problem with going back to court like we're talking about now but it's not the right time for that. . . . [The respondent's] welcome all the time in our home, in my home. . . . I just think that he needs to just get himself together . . . ."

On September 25, 2025, the court, *Dawson, J.*, issued a memorandum of decision in which it granted the petitioner's motion to transfer permanent legal guardianship, overruled the respondent's objection to said motion, and denied the respondent's motion to transfer guardianship. By clear and convincing evidence, the court found that the respondent had failed to rehabilitate as demonstrated by his continued involvement with the criminal justice system, his failure to maintain consistent contact with the department, and his "inconsistent cooperation with the programs set up to assist him." The court found that, although the department made referrals for the respondent to attend substance abuse treatment and intimate partner violence programs, the respondent either "failed to complete these programs or to benefit from the services that these programs offered . . . ." The court found that the respondent had failed "to overcome his long-standing challenges of substance abuse" and that he had not "sufficiently corrected the factors that led to [Analise's] commitment . . . ."

Specific to Sheila M.'s care for Analise, the court first found that "Analise has resided with . . . Sheila M. since August of 2023" and had "previously resided with Sheila M. from 2017 until 2019." The court noted that Analise, at ten years of age, had "spent more than four years of her life in foster care with Sheila M. . . ." The court also found that "Sheila M. has demonstrated her commitment to caring for Analise until the child turns eighteen" and that "[t]he child is strongly attached to Sheila M. . . ." "Sheila M. is disinclined to adopt the child, though she is committed to caring for the child long-term. Thus,

adoption of Analise is not possible . . . ."[4] "The evidence demonstrated that Analise is thriving in the care of [Sheila M.]. Analise shares a close relationship with [Sheila M.]. All of [Analise's] needs are being met in this home. She is up to date with her medical care, does well in school, and maintains many friends."

The court additionally found that Sheila M. is licensed as a foster parent for Analise. In conjunction with this finding, the court referenced Practice Book § 35a-12A (b), which provides in relevant part that, "[i]n cases in which a motion for transfer of guardianship seeks to vest guardianship of a child or youth in any relative who is the licensed foster parent for such child or youth . . . the moving party has the burden of proof that the proposed guardian is suitable and worthy and that transfer of guardianship is in the best interests of the child or youth. In such cases, there shall be a rebuttable presumption that the award of legal guardianship to that relative shall be in the best interests of the child or youth and that such relative is a suitable and worthy person to assume legal guardianship." The court then found that there was no evidence to rebut this presumption.

Thereafter, the court found that the petitioner's "proposed permanency plan is . . . appropriate and in the best interest of Analise. The plan is approved . . . ." The petitioner "has met [her] burden proving that a statutory ground exists for the termination of parental rights as set forth in [General Statutes] § 17a-112 (j), specifically that the respondent . . . has failed to achieve a degree of personal rehabilitation that would encourage the belief that within a reasonable amount of time, considering the age and needs of Analise, that he could assume a responsible position in the child's life . . . ." "Analise has resided with the proposed guardian for more than two years, by all accounts she is thriving in this home.

[4] A department social worker assigned to Analise's case testified that the department had considered a permanency plan of termination of parental rights and adoption, but that Sheila M. would not consent to adoption because she did not want the court to terminate the respondent's parental rights.

Sheila M. is found to be suitable and worthy and it is in the best interest of Analise to vest her permanent legal guardianship in Sheila M." In light of these findings, the court ordered that permanent legal guardianship of Analise be transferred to Sheila M. This appeal followed.

On appeal, the respondent does not challenge the court's underlying factual findings. In fact, he concedes that the petitioner "met [her] burden as to all subelements of a permanent transfer of guardianship." The respondent's sole claim is that the court erroneously determined that a transfer of permanent legal guardianship was in the best interest of Analise "because it frustrates the stated wishes of the proposed guardian who . . . misunderstood the ramifications of . . . a [transfer of permanent guardianship] motion" and "because the permanency concerns that normally impact [transfer of guardianship decisions] were not as acute in [the present] case." We are unpersuaded.

We begin with our standard of review and the applicable legal principles. We review the respondent's claim for abuse of discretion. "To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *In re Marie J.*, 219 Conn. App. 792, 819–20, 296 A.3d 308 (2023).

"Permanent guardianship" is defined by General Statutes § 45a-604 (8) as a guardianship "that is intended to endure until the minor reaches the age of majority without termination of the parental rights of the minor's parents . . . ." See also *In re Brian P.*, 195 Conn. App. 582, 592, 226 A.3d 152 (2020) ("a permanent guardianship is intended to occur without the termination of parental rights"). There is a significant distinction between a transfer of permanent legal guardianship and a transfer of guardianship. When a transfer of guardianship occurs, a child's parent retains parental rights and may, as frequently as every six months, seek a reinstatement of his or her guardianship. See General Statutes § 46b-129 (m).[5] When a transfer of permanent legal guardianship occurs, although a child's parent retains parental rights, he or she is precluded from seeking a reinstatement of guardianship or filing a motion to terminate the permanent guardianship. See General Statutes § 46b-129 (j) (8). However, individuals other than a child's parent, including the child's permanent guardian, may seek modifications to or revocation of a permanent guardianship order. Section 46b-129 (j) (8) specifically provides in relevant part that "[a]n order of permanent legal guardianship may be reopened and modified and the permanent legal guardian removed upon the filing of a motion with the court, provided it is proven by a fair preponderance of the evidence that the permanent legal guardian is no longer suitable and worthy. A parent may not file a motion to terminate a permanent legal guardianship. . . ."

Pursuant to § 46b-129 (j) (7), prior to issuing an order for permanent legal guardianship, "the court shall find by clear and convincing evidence that the permanent legal guardianship is in the best interests of the child or youth

---

[5] General Statutes § 46b-129 (m) provides that "[t]he commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. No such motion shall be filed more often than once every six months."

and that the following have been proven by clear and convincing evidence: **(A)** [o]ne of the statutory grounds for termination of parental rights exists, as set forth in subsection (j) of section 17a-112, or the parents have voluntarily consented to the establishment of the permanent legal guardianship; **(B)** [a]doption of the child or youth is not possible . . . **(C)** . . . (ii) if the child is under twelve years of age, the proposed permanent legal guardian is: **(I)** [a] relative, **(II)** a caregiver, or **(III)** already serving as the permanent legal guardian of at least one of the child's siblings, if any; **(D)** [t]he child or youth has resided with the proposed permanent legal guardian for at least a year; and **(E)** [t]he proposed permanent legal guardian is **(i)** a suitable and worthy person, and **(ii)** committed to remaining the permanent legal guardian and assuming the right and responsibilities for the child or youth until the child or youth attains the age of majority." As stated previously, apart from challenging the court's best interest determination, the respondent "does not dispute that the [petitioner] met [her] burden as to all subelements of a permanent transfer of guardianship."

As the parties correctly observe, neither this court nor our Supreme Court has addressed directly the proper formulation of a court's best interest determination in the context of a transfer of permanent guardianship. Because motions to transfer guardianship are dispositional in nature, as provided by Practice Book § 35a-12A, and because a petition to transfer permanent legal guardianship, like a petition to terminate parental rights, requires a petitioner to prove by clear and convincing evidence that a statutory ground for termination of parental rights exists, we conclude that it is appropriate to look to case law pertaining to the best interest analysis in the dispositional phase of termination of parental rights proceedings to guide our analysis. See General Statutes § 17a-112 (j).

"In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the

child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [the child's] environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence."[6] (Internal quotation marks omitted.) *In re Sequoia G.*, 205 Conn. App. 222, 227, 256 A.3d 195, cert. denied 338 Conn. 904, 258 A.3d 675 (2021).

In claiming that the court abused its discretion in determining that a transfer of permanent legal guardianship was in Analise's best interest, the respondent

---

[6] General Statutes § 17a-112 (k) provides in relevant part that, "in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the [department] has made reasonable efforts to reunite the family pursuant to the federal Adoption and Safe Families Act of 1997, as amended from time to time; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future . . . and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

relies on Sheila M.'s unsworn statement to the court expressing a willingness to return custody of Analise to the respondent if, in the future, the respondent became a suitable caregiver for Analise, and his own stated goal of reunification. He notes that in her unsworn statement to the court, Sheila M. stated that, "[w]hen [the respondent] gets in a better place, I have no problem with going back to court like [we are] talking about now . . . ." On the basis of that purportedly shared goal of reunification, the respondent argues that Sheila M. did not fully understand that for an order of permanent transfer of guardianship to be reopened or modified, § 46b-129 (j) (8) requires that the permanent guardian be found to be no longer suitable or worthy. See General Statutes § 46b-129 (j)(8). This requirement, the respondent argues, "prevents [Sheila M.] from returning to court to argue that the [permanent transfer of guardianship] should be modified because . . . [in light of Sheila M.'s love for Analise] it strains credulity that she would declare herself unable to care for the minor child . . . ." According to the respondent, "[b]ecause § 46b-129 (j)(8) requires a finding that the guardian is no longer suitable or worthy before a permanent transfer of guardianship may be reopened or modified, the trial court's decision frustrated the goals of the parties and, as a result, was not in the best interests of the minor child." We are not persuaded.

First, the record is devoid of any direct evidence supporting the respondent's claim that Sheila M. misunderstood the ramifications of a transfer of permanent guardianship. Instead, the respondent asks us to speculate, based solely on her unsworn statement to the court, about Sheila M.'s understanding of the law and her potential willingness to entertain further legal proceedings in the event of future developments that may or may not occur. See *In re K. M.*, 217 Conn. App. 687, 707 n.18, 289 A.3d 1240 (2023) (court concluded that contention that was unsupported by any evidence is "pure speculation"). As we frequently have stated, "speculation and conjecture have no place in appellate review. . . . Our role is not to guess at possibilities, but to review claims based

on a complete factual record developed by a trial court." (Internal quotation marks omitted.) *In re Samantha S.*, 120 Conn. App. 755, 759, 994 A.2d 259 (2010), appeal dismissed, 300 Conn. 586, 15 A.3d 1062 (2011).

Second, and more fundamentally, the factors to be considered in a court's best interest analysis are inherently child-centered. See footnote 6 of this opinion. "This court has previously elaborated that [a]lthough the term best interest is elusive to precise definition . . . the best interests of the child has been generally defined as a measure of a child's well-being, which includes [her] physical (and material) needs, [her] emotional (and psychological) needs, [her] intellectual and [her] moral needs. . . . [T]he trial court may consider any number of factors that pertain to these [child-centered] considerations, such as the parent['s] rehabilitative status, the length of time that the child is in the temporary care of the state, the child's need for permanency, the proposed guardian's suitability, and the child's bond with the proposed guardian." (Citation omitted; internal quotation marks omitted.) *In re Kadon M.*, 194 Conn. App. 100, 109–10, 219 A.3d 985 (2019).

The respondent's claims, in contrast, relate to Sheila M.'s and the respondent's purportedly shared subjective goal of reunification and Sheila M.'s purported misunderstanding of § 46b-129 (j) (8). Neither of those claims relate to the child-centered best interest determination that the respondent seeks to challenge in this appeal. Consequently, and in light of the court's unchallenged findings that support its determination that a transfer of permanent guardianship was in Analise's best interest, we conclude that the respondent has failed to demonstrate that the court abused its discretion in the present case.[7]

The judgment is affirmed.

[7] As part of his claim, the respondent states in a conclusory fashion that, "because any threat to permanency is merely theoretical and not hinted at in the record, it was not in the best interest of the minor child for the court to grant the permanent motion for transfer of guardianship."

According to the respondent, "[t]he permanency concerns that appropriately play a paramount role in decisions concerning a permanent transfer of guardianship were muted in [the present] case because of the general agreement of the parties that the respondent . . . was not in a position to take care and custody of his daughter and because the history of the case demonstrates that the respondent . . . has sought the best placement for his child whenever possible." The respondent has failed to demonstrate by reference to the record or relevant authority that the court's concern for permanency for Analise was "merely theoretical" and "illusory" in the present case. Indeed, the respondent offers but cursory attention to this argument. Observing that the respondent's abstract assertions are unaccompanied by substantive discussion or citation to legal authorities, we deem the respondent's argument abandoned. See *In re Olivia W.*, 223 Conn. App. 173, 196 n.16, 308 A.3d 571 (2024) (court deemed standalone contentions unsupported by any substantive legal analysis to be abandoned).